IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RAYMOND DAKIM HARRIS JOINER,   )
                               )
            Plaintiff,         )
                               )
       v.                      )   1:13CV933
                               )
DEPARTMENT OF PUBLIC SAFETY, et al., )
                               )
            Defendant(s).      )

MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Raymond Dakim Harris Joiner, a prisoner of the State of North Carolina and frequent pro se litigant, submitted a pro se complaint under 42 U.S.C. § 1983 and requests permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). Plaintiff names the North Carolina Department of Public Safety, Piedmont Correctional Institution, Registered Nurse Jennifer Harris, and Correct Care Solution as Defendants. (Docket Entry 1, § III.) Despite filing nineteen other cases in this Court during the past four years, serving time in a North Carolina prison, and suing Defendants allegedly located in North Carolina over events occurring in North Carolina, Plaintiff filed this Complaint in the United States District Court for the District of South Carolina, which transferred the matter here prior to screening the Complaint or ruling on the *in forma pauperis* request. (Docket Entry 11.) For the reasons that follow, the Complaint should be dismissed pursuant to 28 U.S.C. § 1915A(b) because it is frivolous, because it fails to state a claim on which relief may be granted, and because it seeks monetary damages from a defendant with immunity from such relief.

## Legal Background

Because Plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," this Court has an obligation to "review" this complaint. 28 U.S.C. § 1915A(a). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if [it] – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

As to the first basis for dismissal, the United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 256-57 (4th Cir. 2004) (some internal quotation marks omitted).

The Supreme Court further has identified factually frivolous complaints as ones involving "allegations that are fanciful, fantastic, and delusional. As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992) (internal citations and quotation marks omitted). In making such findings, this Court may "apply

common sense." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 954 (4th Cir. 1995) (en banc).

Alternatively, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1), when the complaint does not "contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1] The Court may also anticipate affirmative defenses that clearly appear on the face of the complaint. Nasim, 64 F.3d at 955; Todd v. Baskerville, 712 F.2d 70, 74 (4th Cir. 1983).

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

The final ground for dismissal under 28 U.S.C. § 1915A(b)(2) generally applies to situations in which doctrines established by the United States Constitution or at common law immunize governments and/or government personnel from liability for monetary damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing sovereign immunity of states and state officials under Eleventh Amendment); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship between 42 U.S.C. § 1983 and common-law immunity doctrines, such as judicial, legislative, and prosecutorial immunity). Cf. Allen v. Burke, 690 F.2d 376, 379 (4th Cir. 1982) (noting that, even where "damages are theoretically available under [certain] statutes . . ., in some cases, immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy").

## The Complaint

The Complaint names four Defendants: (1) Piedmont Correctional Institution, a state prison formerly housing Plaintiff, (2) the North Carolina Department of Public Safety, (3) Jennifer Harris, a nurse apparently employed at Piedmont Correctional, and (4) Correct Care Solution. (Docket Entry 1, § III.) Plaintiff raises a variety of complaints which are loosely related and only partially involve the named Defendants. He alleges first that he "was forced into a contract with the courts under common law that is not constitutional and without any written consent" resulting in his conviction and imprisonment. (Id., § IV.) He then arrived at Piedmont Correctional on July 2, 2013. (Id.) Soon thereafter, Defendant Harris attempted to give him a tuberculosis test and, when Plaintiff objected, someone told him that the prison

would employ the use of force if he refused the test. (Id.) A prison grievance filed by Plaintiff on July 10, 2013, reflects that Plaintiff thereafter verbally agreed to the test, but refused to sign any paperwork. (Id., Exs.)

Plaintiff next asserts that he wrote grievances on July 22, 2013, and July 31, 2013, "making it clearly known that [he] would like to secure [his] person under the 4th Amendment" to the United States Constitution by filing Uniform Commercial Code (hereinafter UCC) forms UCC 1 and/or UCC 1Ad. (Id., § IV.) He requested that prison officials either release from his trust fund, or simply provide him with, $38.00 to allow him to file these forms. (Id.) Prison officials responded that such matters fell outside Department of Public Safety control. (Id., § IV and Exs.) The refusal to allow or help Plaintiff file the forms appears to represent the central focus of Plaintiff's Complaint.

Plaintiff also contends that Defendants attempted to force him to submit to a urine test. (Id., Ex. IV.) The Complaint does not allege the purpose or the date of that test, but does state that Plaintiff filed a grievance about the urine and the tuberculosis test on July 10, 2013. (Id., § IV.) This conflicts with his exhibits which show that his grievance on July 10, 2013, addressed only the tuberculosis test. (Id., Exs.) The first and only mention of the urine test in Plaintiff's grievances appears in his form dated July 31, 2013, which mainly focuses on the UCC forms issue. (Id.) Other paperwork provided by Plaintiff reflects that an officer requested that Plaintiff take the urine test on July 14, 2013, but that Plaintiff refused, leading to a disciplinary violation, with Plaintiff receiving 60 days of segregated confinement and six months of limited draw on his trust account as punishment. (Id.) Plaintiff alleges that an

unidentified person told him that force would be used if he refused to take the urine test (id., § IV), but, given that no one actually forced Plaintiff to take a urine test, Plaintiff's claim actually appears to turn on the contention that Defendants wrongfully disciplined him for refusing to take the urine test.

Finally, Plaintiff states that his "other further claim[s] [are] racketeering, embezzlement, extortion, fraud, invasion of privacy, and enforcement of an ex post facto law." (Id.) He sets out no facts that clearly relate to these types of claims. (See id.)

As relief for his claims, Plaintiff seeks a declaration that Defendants' acts violated his constitutional rights, compensatory damages in the amount of $70,000 as to each Defendant, punitive damages in the amount of $40,000 as to each Defendant, and an order that his current prison, Tabor Correctional Institution, issue him the UCC forms he seeks and the $38.00 to process them. (Id., § V.)

## Discussion

As an initial matter, portions of the Complaint fail as a matter of law because Plaintiff may seek to undermine his conviction or sentence with some of his allegations. In addition to his allegation set out earlier concerning forced contracting with the courts, he also states without explanation that his "rights [were] strip[ped] and [he] was found guilty at trial" and that "county courts are not constitutional courts." (Id., § IV.) To the extent Plaintiff challenges his conviction or sentence, he may not do so without first showing that such conviction or sentence has been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or, finally, called into question by a federal court through

-6-

the issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477 (1994). Plaintiff fails to make any such showing and the Court should dismiss any attack on his conviction or sentence for this reason.

Next, by designating the North Carolina Department of Public Safety and a state prison as Defendants, Plaintiff effectively has sued the State of North Carolina; however, neither the State nor it agencies constitute "persons" subject to suit under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Further, even if Plaintiff sued a proper representative of the State, the Eleventh Amendment to the United States Constitution would limit any relief to a prospective injunction to remedy an ongoing violation of federal law. McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010). Plaintiff's only request for injunctive relief asks that the Court enter an order forcing his current prison to enable him to file the UCC forms he requests and to provide him with the required processing fees. Even if Plaintiff named a proper representative responsible for the operations at his current facility, that request would fail as a matter of law. The forms Plaintiff seeks to file are designed for use by creditors to perfect a security interest in the property of a debtor, thereby "securing" the creditor's interest. Plaintiff intends to use them to "secure his person and property" and refers to the Fourth Amendment's right to be "secure." "Secure" and "security" as used in the UCC have entirely different meanings from "secure" as used in the Fourth Amendment. The UCC forms Plaintiff seeks have absolutely nothing to do with protecting his Fourth Amendment rights. Thus, his request for injunctive relief, as well as his claim generally regarding the UCC forms, is frivolous in the sense that "it lacks an

-7-

arguable basis either in law or in fact," Neitzke, 490 U.S. at 325. Any claims against the Department of Public Safety, as well as Plaintiff's entire UCC claim, should be dismissed as frivolous and/or for failing to state a claim for which any relief can be granted.

Plaintiff also names Correct Care Solution as a Defendant, but does not explain what that entity is or make any allegation against it. Therefore, he states no claim against Correct Care Solution.

Jennifer Harris thus represents the only potentially viable Defendant currently named or even vaguely referenced in the Complaint. The only clear allegation against Harris concerns her attempted performance of the tuberculosis test and, perhaps, the urine test. She may also be the person who told Plaintiff that force would be used if he refused the tests. Plaintiff additionally alleges that "a delegation of authority was never produce[d] by the court to give legal authority" to Harris to perform the tuberculosis test or request Plaintiff's urine. (Docket Entry 1, § IV.) None of these allegations states any claim against Harris. The undersigned Magistrate Judge knows of no federal law requiring a "delegation of authority" from a court or any similar document for prison authorities to run a tuberculosis or urine test. Further, tuberculosis is a dangerous and contagious disease which states have a strong interest in combating in prisons. Karolis v. New Jersey Dept. of Corrections, 935 F. Supp. 523, 527 (D.N.J. 1996). Prisons thus can require tuberculosis testing and compel compliance by force if necessary. Rhinehart v. Gomez, No. 93-CV3747, 1995 WL 364339, at *4 (N.D. Cal. June 08, 1995) (unpublished).

As for urine testing, the Fourth Amendment allows random urine testing for drugs in prison populations. Lucero v. Gunter, 52 F.3d 874, 877 (10th Cir. 1995). Likewise, prisons may conduct testing where "reasonably related to legitimate penological interests," which include stemming the use of drugs in prison. Thompson v. Souza, 111 F.3d 694, 703 (9th Cir. 1997). Plaintiff makes no allegation that the request for a urine test in this case did not fall within these bounds. Instead, he objects to the lack of a "delegation of authority" and Defendants' use of a threat of force to attempt to compel testing. As stated above, testing requires no "delegation of authority." As for a threat of force, Plaintiff does not allege that Defendants or other any other persons actually used any force. In fact, his exhibits show that, ultimately, he did not take the urine test. Therefore, his allegation against Harris at most involves only a threat of force, which does not state any claim for relief. See Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983."). As stated previously, Plaintiff may contend that prison officials wrongfully punished him for failing to take the urine test. However, he makes no allegation that Defendant Harris or any other named Defendant participated in the disciplinary process. He also points to no specific defect in the disciplinary process and seeks no injunctive relief to mitigate the punishment imposed as a result to the discipline. In the end, he states no cognizable claim for relief connected to the urine test.

Plaintiff's remaining claims for "racketeering, embezzlement, extortion, fraud, invasion of privacy, and enforcement of an ex post facto law," fail to state a claim due to the lack of any supporting factual matter. Iqbal, 556 U.S. at 678.

As a result, Plaintiff's request to proceed *in forma pauperis* should not be countenanced, with the exception that *in forma pauperis* status shall be granted for the sole purpose of entering this Order and Recommendation. Plaintiff submitted the Complaint for filing, however, and, notwithstanding the preceding determination, § 1915(b)(1) requires that he make an initial payment. However, the Court will not order any such payment because it appears from Plaintiff's *in forma pauperis* request that he does not have sufficient funds to make any initial partial payment. Instead, the Court will order only that Plaintiff's custodian deduct money for payment of the filing fee should funds become available.

IT IS THEREFORE ORDERED that *in forma pauperis* status be granted for the sole purpose of entering this Order and Recommendation.

IT IS FURTHER ORDERED that Plaintiff's trust officer shall be directed to pay to the Clerk of this Court 20% of all deposits to his account starting with the month of November, 2013, and thereafter each time that the amount in the account exceeds $10.00 until the $400.00 filing fee has been paid.

If an inmate has been ordered to make Prison Litigation Reform Act payments in more than one action or appeal in the federal courts, the total amount collected for all cases cannot exceed 20 percent of the inmate's preceding monthly income or trust account balance, as calculated under 28 U.S.C. § 1915(b)(2).

IT IS RECOMMENDED that this action be dismissed pursuant to 28 U.S.C. § 1915A for being frivolous or for failing to state a claim upon which relief may be granted, as well as for seeking monetary relief against a defendant who is immune from such relief.

This, the 25th day of October, 2013.

_/s/ L. Patrick Auld_
**L. Patrick Auld**
**United States Magistrate Judge**

-11-

Case 1:13-cv-00933-NCT-LPA   Document 14   Filed 10/25/13   Page 11 of 11